UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

UNITED STATES OF AMERICA        )
                                        )
      v.                            )      No. 3:10-00103
                                          )      CHIEF JUDGE CAMPBELL
JOSHUA BASTOKY                   )

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO SUPPRESS**

COMES NOW the United States of America, by and through the undersigned Assistant

United States Attorney, and provides the following response in opposition to the Defendant's

Motion to Suppress any evidence obtained as a result of the stop of the defendant (Docket No. 19).

The Government respectfully requests that the Court deny the defendant's motion to suppress. The

officer had probable cause to search the defendant's truck. In the alternative, the officer reasonably

believed that the defendant was dangerous and might gain control of a weapon.

**Facts**

On November 1, 2009, at approximately 12:45 p.m., Police Officer Charles Coe ("Officer

Coe") of the Metropolitan Nashville Police Department ("Metro") was dispatched to the area of

7820 Highway 100 in Nashville, Tennessee to respond to a domestic disturbance call. The victim,

the defendant's recently separated wife, returned home to retrieve some belongings when a

confrontation with the defendant ensued and the defendant pointed a gun at her before fleeing in his

truck.

The dispatch included a description of the defendant's truck. While enroute to the residence,

Officer Coe passed a truck fitting that description and traveling in the opposite direction on Highway

100, away from the area of the incident. Officer Coe contacted dispatch and confirmed the

description of the truck. Officer Coe turned his vehicle around and drove after the truck. The vehicle, a 1997 Dodge Ram pickup truck, bore Tennessee license plate number "96796 H1". A records check confirmed that the vehicle was registered to the defendant, who had been identified as the suspect in the incident.

Officer Coe initiated a traffic stop on the defendant's truck in the vicinity of Morton Mill and Harpeth Lake Court. Officer Coe was aware that, in addition to being the suspect in the incident, that the defendant reportedly used a firearm. Officer Coe was also aware that the defendant had previously been arrested for robbery. Officer Coe approached and detected a strong odor of marijuana emanating from the defendant's truck. Officer Coe asked the defendant to exit the truck and the defendant complied. Officer Coe patted the defendant down and recovered a folding knife from his pants pocket.

Officer Coe, who was still alone at the time, placed the defendant in the rear of his police vehicle. Officer Coe waited for a backup officer to arrive on the scene. The backup officer arrived and Officer Coe then returned to the defendant's truck to ascertain the source of the marijuana odor emanating from the vehicle and locate, if possible, the firearm reportedly used in the domestic disturbance. Officer Coe recovered two burnt or partially smoked marijuana cigarettes from the vehicle's ashtray.

Officer Coe's search was interrupted by the arrival of the defendant's father on the scene. The defendant's father stated in substance that he wanted to take the truck rather than have it towed. Officer Coe instructed the defendant's father to stay away from the truck. Officer Coe continued his search of the vehicle only to be interrupted again, this time by the arrival of the defendant's mother on the scene. The defendant's mother requested that she be allowed to speak with the

2

defendant. Officer Coe rolled down the rear window of his vehicle so the defendant's mother could approach him and tell him that she loved him. She did so and stepped away from Officer Coe's vehicle.

The backup officer left the scene and proceeded on to 7820 Highway 100 to locate the victim and check on her condition. Officer Coe returned to the defendant's vehicle and resumed his search. He recovered a loaded Glock, Model 26, 9mm semi-automatic pistol from the rear bench seat of the vehicle. It had been concealed underneath some clothing and was within reach of the driver's seat.

Officer Coe returned to his vehicle and began to clear the firearm and render it safe. The defendant spontaneously stated, in substance, "I guess I'm screwed now." Officer Coe continued to clear the firearm until he heard noises coming from the area of the rear seat. He observed that the defendant was partially out the window and was fumbling with the door handle. The defendant got the door open, exited the vehicle and fled on foot. Officer Coe pursued the defendant, ordering him several times, unsuccessfully, to stop. The defendant jumped into Morton Mill Creek and began to swim. Officer Coe returned to his vehicle to secure it, retrieve his portable radio and call for assistance. Officer Coe lost sight of the defendant in the process. The defendant turned himself in to Metro the following day, November 2, 2009.

## Argument

### I. OFFICER COE HAD PROBABLE CAUSE TO SEARCH THE DEFENDANT'S TRUCK.

The defendant claims that Officer Coe at no point had probable cause to search the defendant's truck and that all evidence obtained as a result of the stop of the defendant should be suppressed. The defendant's argument is without merit. The Sixth Circuit held in U.S. v. Foster that the odor of marijuana emanating from a vehicle gives rise to probable cause to search that vehicle

without a search warrant. 376 F.3d 577, 588 (6th Cir. 2004). In Foster, officers responsible for investigating quality of life crimes were responding to a complaint in an area of Cleveland, Ohio known for drug activity when they encountered Mr. Foster who was outside of his vehicle and under the influence of PCP. Id. at 581. Mr. Foster asked to return to his vehicle and the officers agreed to let him do so given the cold temperature and his lack of a jacket. Id. at 582. One of the officers opened the driver's side door to Mr. Foster's vehicle and detected the odor of marijuana emanating from the vehicle. Id. The officer asked Mr. Foster if there was marijuana in the vehicle and Mr. Foster admitted that there was and told the officer where it was within the vehicle. Id. The officer leaned into the vehicle to seize the marijuana and observed a firearm in the vehicle. Id. The officer seized the firearm and a quantity of PCP as well. Id.

Mr. Foster moved to suppress the evidence, but the district court upheld the search. Id. at 588. The Sixth Circuit affirmed the district court's decision, holding that:

> when the officers detected the smell of marijuana coming from [Mr.] Foster's vehicle, this provided them with probable cause to search the vehicle without a search warrant. . .As a result, because the officers had probable cause to search the vehicle, the marijuana, gun and PCP recovered from the car were all properly admissible against the defendant.

Id. (internal citations omitted). The Sixth Circuit noted its earlier decisions in U.S. v. Garza, 10 F.3d 1241, 1246 (6th Cir. 1993), and U.S. v. Elkins, 300 F.3d 638, 659 (6th Cir. 2002), which stood for the same principle - that the odor of marijuana emanating from a vehicle gives rise to probable cause to search that vehicle without a search warrant.

In the instant case, Officer Coe encountered the defendant as he fled the scene of the domestic incident and initiated a traffic stop on his truck. Officer Coe approached the truck and detected a strong odor of marijuana emanating from the passenger compartment of the defendant's

4

truck. The odor of marijuana emanating from the defendant's truck gave rise to probable cause to search that vehicle without a search warrant. The marijuana and firearm were recovered during the subsequent and legitimate search of the truck. The Court should not suppress the evidence.

## II.     OFFICER COE ALSO REASONABLY BELIEVED THAT THE DEFENDANT WAS DANGEROUS AND MIGHT GAIN CONTROL OF A WEAPON.

In the alternative, the Court could find that Officer Coe's search of the passenger compartment of the defendant's truck was proper under Terry v Ohio, 392 U.S. 1 (1968), because he reasonably believed that the defendant was dangerous and may gain immediate control of a weapon. Michigan v. Long, 463 U.S. 1032, 1049 (1983). In Long, deputies observed a vehicle driving in an erratic manner and at a high rate of speed. Id. at 1035. The vehicle went off the road and when the deputies stopped to investigate, they encountered Mr. Long who was standing beside the vehicle. Id. Mr. Long appeared to be under the influence. Id. at 1036. After a brief conversation Mr. Long turned away from the deputies and walked towards the open door of the vehicle. Id. The deputies observed a hunting knife on the floorboard of the vehicle, stopped Mr. Long and subjected him to a pat-down. Id. One deputy shined his flashlight into the interior of the vehicle to search for other weapons and noticed an object protruding from under an armrest. Id. The deputy knelt in the vehicle, lifted the armrest, observed a pouch and then observed that it contained marijuana. Id. The deputies seized the marijuana and arrested Mr. Long. Id.

The United States Supreme Court took up Long to consider the question of "the authority of [an] officer to protect himself by conducting a Terry type search of the passenger compartment of a motor vehicle during the lawful investigatory stop of the occupant of the vehicle." Id. at 1037. The Supreme Court upheld that authority under Terry and its progeny given the fact that

5

"investigative detentions involving suspects in vehicles are especially fraught with danger to police

officers" and the fact that "suspects may injure police officers and others by virtue of their access

to weapons, even though they may not themselves be armed." Id. at 1046-48.  The Supreme Court

concluded that:

> the search of the passenger compartment of an automobile,
> limited to those areas in which a weapon may be placed or
> hidden, is permissible if the police officer possesses a reasonable
> belief based on specific and articulable facts which, taken together
> with the rational inferences from those facts, reasonably warrant
> the officers in believing that the suspect is dangerous and the
> suspect may gain immediate control of weapons.

Id. at1049 (internal quotation marks and citations omitted).

The issue to be addressed then in any such analysis is "whether a reasonably prudent man

in the circumstances would be warranted in the belief that his safety or that of others was in danger."

Id. at 1050.  Addressing the specifics facts in Mr. Long's case, the Supreme Court found that the

deputies "did not act unreasonably in taking preventative measures to ensure that there were no other

weapons within [Mr.] Long's immediate grasp. . ." Id. at 1051.  The Supreme Court acknowledged,

but discounted the argument that it was not reasonable for the deputies to fear for their safety

because Mr. Long was under their control and could not access any weapons that might have been

in his vehicle:

> a Terry suspect in [Mr.] Long's position [might] break away from
> police control and retrieve a weapon from his automobile. . .if the
> suspect is not placed under arrest, he will be permitted to re[-]enter
> his automobile and he will then have access to any weapons inside
> . . .[o]r, as here, the suspect may be permitted to re[-]enter the vehicle
> before the Terry investigation is over, and again, may have access
> to weapons.

Id. at 1051-52 (internal citations omitted).  The search of Mr. Long's vehicle was limited to "those

6

areas to which [Mr.] Long would generally have immediate control, and that could contain a weapon." Id. at 1050. As the Supreme Court recognized, the Fourth Amendment does not require suppression where an officer discovered contraband while "conducting a legitimate Terry search of the interior of the automobile." Id.

In the instant case, a reasonably prudent man in Officer Coe's situation would be warranted in the belief that his safety or that of others was in danger. He had been dispatched to an armed domestic disturbance. He encountered the defendant as he fled the scene in his vehicle. He knew that the defendant was alleged to have used a firearm in the incident and he also knew that the defendant had a prior arrest for robbery. He detected a strong odor of marijuana emanating from the defendant's truck. The defendant had a folding knife in his pants pocket. Officer Coe was alone at the time and placed the defendant in the rear of his police vehicle. Backup arrived and Officer Coe searched the defendant's truck to locate, if possible, the firearm reportedly used in the domestic disturbance, a weapon that could be used against him or others. The defendant was under police control, but he was not under arrest and could have broken away and attempted to retrieve that weapon before Officer Coe could locate it. The defendant clearly demonstrated his willingness and ability to break away from police control in escaping from the rear of Officer Coe's police vehicle. Officer Coe's search was limited to those areas to which the defendant would generally have immediate control and that could contain a weapon - to include the area of the rear bench seat that was within reach of the driver's seat. Officer Coe discovered the contraband - the firearm and the marijuana - while conducting a legitimate Terry search of the interior of the defendant's truck. The Court should not suppress the evidence.

7

Case 3:10-cr-00103   Document 21   Filed 08/05/10   Page 7 of 9 PageID #: 41

## Conclusion

Accordingly, for the reasons stated herein, the defendant's motion to suppress the evidence obtained as a result of the stop of the defendant should be denied.

Respectfully submitted,

/s/ Tom Kent
TOM KENT
Assistant United States Attorney
110 9th Avenue South, Suite A-961
Nashville, TN 37203
615-736-5151

8

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via the Court's electronic filing system to Jack D. Lowery, counsel for the defendant, 150 Public Square, Lowery Building, Lebanon, Tennessee 37087, on this 5th day of August, 2010.

/s/ Tom Kent
TOM KENT
Assistant United States Attorney

9